**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 21, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

XIU LIN, a/k/a Ziu Lin,

     Petitioner,

v.

JEFF SESSIONS,[*] United States Attorney
General,

     Respondent.

No. 16-9535
(Petition for Review)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **KELLY**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

Xiu Lin, a native and citizen of the People's Republic of China and proceeding

pro se as petitioner, seeks review of a Board of Immigration Appeals (BIA) order

affirming an Immigration Judge (IJ) removal order. The BIA dismissed Ms. Lin's

requests for asylum, restriction on removal, and protection under the Convention

---

[*] In accordance with Rule 43(c) of the Federal Rules of Appellate Procedure,
Jeff Sessions is substituted for Loretta E. Lynch as the respondent in this action.

[**] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Against Torture (CAT).  Exercising jurisdiction under 8 U.S.C. § 1252, we deny the petition for review.

## I.  BACKGROUND

Ms. Lin entered the United States in March 2003 and was taken to Denver, Colorado.  Her parents had hired a smuggler to transport her from China but had not paid his full fee, so the smuggler required Ms. Lin to work in a restaurant without pay for two years.  In 2005, she married a Chinese national.  They have two children who are United States citizens.

In October 2010, Ms. Lin was charged with removability as an alien present in the United States without admission or parole.  She conceded removability and requested asylum, withholding of removal, and CAT protection.  She claimed she would be persecuted and tortured if returned to China because she is a practicing Catholic.

### A. *Asylum Application, Pretrial Statement, and Immigration Court Testimony*

Ms. Lin's case hinges on her account of her 1998 arrest in China for participation in an underground Catholic church.

In her asylum application, Ms. Lin described how the Chinese police treated her:  "During the interrogation, the police beat me, mistreated me and suppressed me."  Admin. R. at 424.  Her pretrial statement similarly recounted the episode: "During her detention, she was interrogated, beaten, and mistreated by the police. After her release, the police often went to her home to harass her."  *Id.* at 405.

- 2 -

The IJ held several hearings. Ms. Lin was represented by counsel and expanded on these allegations. She testified that she and her sister attended an underground Catholic house church. In November 1998, Ms. Lin was arrested for printing church calendars. She testified that the police detained her for seven days, slapped her across the face, grabbed her hair and slammed her head on the table, and beat her hand with a baton. The pain caused her to scream and lose consciousness. The beatings, she said, damaged her legs and prevented her from attending the church for half a year. She told no one of the beatings except her sister.

Ms. Lin testified that she initially did not reveal to the police the identity of anyone in her underground church who directed her to print the calendars, but later in the police interrogation after the beatings she identified a church member who had done so. In contrast, on redirect examination at a later hearing, Ms. Lin testified that, although the local priest took the lead in printing and distribution of the church calendars, she told the police that she alone had done so.

Ms. Lin also testified that her sister was arrested in China for conducting a Catholic mass. Although Ms. Lin had stated in her asylum application that this arrest had occurred in January 2011, at the August 4, 2011 hearing she said her sister's arrest happened in January 2010. On further questioning by her attorney, Ms. Lin stated that the arrest was in January 2011, seven months before the hearing.

## B. *Immigration Judge Credibility Determinations*

The IJ found Ms. Lin's testimony not credible, citing discrepancies between her testimony and her application documents concerning her November 1998 arrest. The IJ also found internal inconsistencies in Ms. Lin's testimony:

- she testified that she identified to the police the person who had instructed her to print the church calendars and later testified that she acted alone;

- she claimed that she was a devout Catholic, but she did not know the identity of the Pope, and

- she testified that she and her husband belonged to the same Catholic church, but later testified that her husband was a Protestant and did not go to church with her.

The IJ also noted that Ms. Lin testified her sister's arrest occurred in January 2010 and that she did not change her testimony until confronted with her pretrial statement, which stated that the arrest happened in January 2011. The IJ rejected Ms. Lin's explanation that the inconsistency was a mistake given the proximity of the arrest to the hearing (seven months).

The IJ found other inconsistencies. Ms. Lin testified that her mother paid 45,000 yuan to obtain her sister's release from jail, contradicting her pretrial statement and her sister's letter, which both asserted the amount was 20,000 yuan. The IJ rejected Ms. Lin's explanation as to why she did not include that fact before she testified that 25,000 of the 45,000 yuan payment was an unofficial bribe.

Ms. Lin testified that her sister was a church leader in China in 2001, but a letter from her sister stated that she had become a church leader in 2010. The IJ also

noted that Ms. Lin did not respond to questions about why her family had paid for her to leave China but had not done the same for her sister.

Ms. Lin's counsel called Ms. Lin's co-parishioner and the principal at her nephew's school to testify about Ms. Lin's practice of Catholicism in the United States. But the IJ gave diminished weight to the testimony of this witness because she had been in the hearing room at a prior hearing when Ms. Lin testified.

The IJ found implausible Ms. Lin's testimony that she told no one at her underground church in China, including the priest, that the police had beaten her. She claimed she told only her sister, who eventually told church members. The IJ also found implausible:

- that the church members would not know about such a serious beating, inflicted on an allegedly active church member while providing a service to the church, that prevented her from walking or attending church for half a year;

- that the Chinese police checked on Ms. Lin every week following her release from custody but did not arrest, inquire after, or search for the individual she identified as the person who instructed her to print the calendars;

- Ms. Lin's claim that her family would not help her sister leave China given Ms. Lin's claims that her sister also suffered a police beating; and

- Ms. Lin's inability to remember the name or denomination of the church where she was married when these details would be important to her in light of her Catholic faith, for which she was allegedly persecuted.

C. *Immigration Judge and Board of Immigration Appeals Decisions*

Having found Ms. Lin not credible, the IJ denied Ms. Lin's application for asylum, withholding of removal, and CAT protection. Accordingly, the IJ ordered Ms. Lin removed to China. Ms. Lin timely appealed to the BIA, challenging the IJ's credibility determination. The BIA affirmed the IJ's findings and removal order. On appeal to this court, Ms. Lin challenges the determination that she was not credible.[1]

## II. STANDARD OF REVIEW

We review the BIA's decision under a substantial evidence standard, considering the record as a whole. *Neri-Garcia v. Holder*, 696 F.3d 1003, 1008 (10th Cir. 2012). Under that standard, "[a]gency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1122 (10th Cir. 2007) (internal quotation marks omitted); *see also* 8 U.S.C. § 1252(b)(4)(B) (stating "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary").

"The IJ's credibility assessment is a factual finding, and will ordinarily be given great weight." *Htun v. Lynch*, 818 F.3d 1111, 1118-19 (10th Cir. 2016) (citation and internal quotation marks omitted). Credibility findings can be based on

---

[1] Ms. Lin also contends generally that the agency should have considered documentation she submitted, but she has not described the documents in question, nor has she explained how the agency erred in failing to consider them. We therefore do not address this argument. *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider [appellate claims] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." (internal quotation marks omitted)).

"any inaccuracies or falsehoods" in an asylum applicant's written or oral statements "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." § 1158(b)(1)(B)(iii).

When, as here, the BIA has issued a single-member decision, "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA, [but] we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Maatougui v. Holder*, 738 F.3d 1230, 1237 n.2 (10th Cir. 2013) (internal quotation marks and alterations omitted).

We liberally construe Ms. Lin's pro se filings. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). We do not, however, "take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.* "[P]ro se parties [must] follow the same rules of procedure that govern other litigants." *Id.* (internal quotation marks omitted).

## III. **ASYLUM**

The BIA based its decision solely on Ms. Lin's lack of credibility. Under the substantial evidence standard, we cannot conclude that any reasonable adjudicator would be compelled to disagree with the BIA's credibility finding. We start with the asylum request.

To be eligible for asylum, an alien must first show that she is a "refugee." *Wiransane v. Ashcroft,* 366 F.3d 889, 893 (10th Cir. 2004). To establish refugee status, the applicant must demonstrate that she has suffered past persecution or has "a well-founded fear of [future] persecution on account of race, religion, nationality,

membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *Tulengkey v. Gonzales,* 425 F.3d 1277, 1280 (10th Cir. 2005). "The burden of proof is on the applicant to establish that [she] is a refugee." 8 U.S.C. § 1158(b)(1)(B)(i).

A. *Pretrial Documents and Testimony*

As the BIA noted, Ms. Lin's hearing testimony differed from her pretrial written documents describing her experiences while under arrest in China in 1998. Ms. Lin counters that her testimony was more detailed but not contradictory. She explains that because her experience was a painful memory, she did not describe it more fully in her March 2011 asylum application or in her July 2011 pretrial statement.[2]

We agree Ms. Lin's brief written descriptions of how the police treated her in China do not conflict with her more detailed hearing testimony. We "must be sensitive to the pressures bearing on persons seeking to escape persecution and make allowances for omissions of detail in their early accounts of what befell them." *Ismaiel*, 516 F.3d at 1206. But here, counsel assisted in preparing the pretrial documents well over a decade after Ms. Lin's arrest and alleged beating. Thus, "[t]he time elapsed since the alleged trauma and the assistance of counsel should reduce the number of omitted items later elicited in testimony." *Id.* These

---

[2] Ms. Lin contends that the IJ did not allow her to provide this explanation, but the record demonstrates that her attorney asked for an explanation, to which she replied, "It was such a painful memory. I don't even want to mention it." Admin. R. at 162.

circumstances can "support[] an adverse credibility finding." *Id.* Further, the agency properly considered "all relevant factors," including "the consistency of [Ms. Lin's] testimony with other evidence of record." § 1158(b)(1)(B)(iii).

## B. *Inconsistent Testimony*

The BIA also found Ms. Lin not credible based on her inconsistent testimony as to whether she revealed to the Chinese police the identity of the person who told her to print the church calendars. Ms. Lin first testified that she did not reveal the name of anyone else involved in printing the calendars until she could not stand the torture anymore. But she testified at a later hearing that she had told the police she acted alone. She argues that her testimony at the later hearing was "not technically inconsistent" with her earlier testimony. Aplt. Br. at 6. But her later testimony was inconsistent because it did not mention that she had revealed the name of another person involved in printing the calendars. Inconsistent statements are properly the basis of an adverse credibility determination. *See* § 1158(b)(1)(B)(iii). Ms. Lin also complains that the IJ did not allow her to explain this discrepancy. The record reflects, however, that Ms. Lin was free to respond fully to the questions posed by her attorney.

The BIA further discounted Ms. Lin's credibility based on her inconsistent testimony concerning the year her sister was arrested for conducting a Catholic mass in China. After testifying that the date was January 2010, and after being shown her prior statement, she changed her testimony to January 2011. Ms. Lin argues she was "too excited emotionally so [she] mentioned the wrong time previously." Aplt. Br. at

- 9 -

12. But the BIA found this argument not persuasive because the arrest occurred just seven months before Ms. Lin's hearing, a relatively short time span that she could have been expected to recollect.

## C. *Corroborative Evidence*

The BIA evaluated Ms. Lin's corroborative evidence and concluded that it was insufficient to rehabilitate her inconsistent testimony. The BIA noted that the letter from Ms. Lin's sister did not support her assertion that their mother had to pay 45,000 yuan, rather than 20,000 yuan, to secure her sister's release from jail. The BIA also endorsed the IJ's decision to give diminished weight to Ms. Lin's witness who had been present during an earlier hearing.

## D. *Substantial Evidence Review*

Having reviewed the record under the deferential substantial evidence standard of review, we hold that a reasonable adjudicator would not be compelled to conclude that Ms. Lin must be considered credible.[3] We therefore deny the petition on the asylum request.

---

[3] Ms. Lin also challenges the IJ's remaining adverse credibility findings. We do not address these issues because our review is limited to grounds relied on by the BIA. *See Xue v. Lynch*, 846 F.3d 1099, 1103 (10th Cir. 2017) ("[I]n deference to the agency's own procedures, we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." (internal quotation marks omitted)).

- 10 -

## IV. **RESTRICTION ON REMOVAL AND CAT RELIEF**

Our foregoing review of the BIA's credibility determination applies with equal force to Ms. Lin's other requests for relief.

"The showing required for [restriction on] removal is more stringent tha[n] the showing required for asylum." *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012). To obtain such relief, "an applicant must demonstrate that there is a clear probability of persecution" on one of the five enumerated grounds. *Id.* (internal quotation marks omitted). And to be eligible for protection under the CAT, "an individual must establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Id.* at 1233-34 (internal quotation marks omitted).

Having failed to meet the burden required for asylum, Ms. Lin's claim for restriction on removal necessarily fails. *See id.* at 1234 (holding that an applicant who "fails to satisfy the lower burden of proof required for asylum . . . also fails to satisfy the higher standard of eligibility for [restriction on] removal").

To establish her CAT claim, Ms. Lin relies on the same evidence as for her asylum claim, which the agency found not to be credible, so CAT relief also was properly denied. *See Ismaiel*, 516 F.3d at 1206 (upholding the denial of CAT relief based on adverse credibility finding).

## V. **CONCLUSION**

We deny the petition for review.

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge